CARLTON, J.,
for the Court:
¶ 1. Jolynne and Anthony Trapani and Trapani’s Eatery, Inc.[1] appeal the decision of the Hancock County Circuit Court granting a directed verdict in favor of David Treutel and Treutel Insurance Agency, Inc.[2] On appeal, the Trapanis assert the following assignments of error by the circuit court:
(1) Whether the trial court erred by directing a verdict for [Treutel] by failing to consider the testimony of [Jolynne] and take all reasonable inferences in her favor as required by [Mississippi Rule of Civil Procedure] 50.
(2) Whether the trial court improperly redacted page five of [the Trapanis’] exhibit P-15 as hearsay.
(3) Whether the trial court improperly redacted portions of [the Trapanis’] exhibit P-16.
(4) Whether the trial judge improperly excluded [the Trapanis’] exhibit P-17 as not being the best evidence.
(5) Whether the trial judge erred in excluding [the Trapanis’] expert Peter Quave.
(6) Whether the trial court improperly allowed [Treutel] to claim a defense never asserted by the insurer.
Finding no error, we affirm the circuit court’s judgment granting a directed verdict in favor of Treutel.
FACTS
¶ 2. Jolynne and Anthony Trapani owned Trapani’s Eatery, Inc., a restaurant located in Bay St. Louis, Mississippi. Pri- or to its destruction by Hurricane Katrina, the restaurant was located in a building along Beach Boulevard in Bay St. Louis at a lower-risk “C” flood zone.
¶ 3. After observing the devastation after Hurricane Ivan, Jolynne testified that she contacted her insurance company, Treutel Insurance Agency, to inquire about increasing the current coverage limits on the restaurant. Over the course of three or four meetings from late May to early July 2005, insurance agent David Treutel and Jolynne discussed a series of changes to the restaurant’s policies. Jo-lynne testified that she saw a need to increase the wind/hail policies coverage limits, and she asked that David make the following changes, among others: to increase the structure coverage from $149,477 to $300,000; to increase the contents coverage from $76,794 to $150,000; and to increase the business interruption coverage from $35,000 to $300,000. The other suggested changes remain undisputed.
¶ 4. Then, on August 29, 2005, Hurricane Katrina devastated Bay St. Louis, leaving virtually nothing remaining of Trapani Eatery’s structure. In her appellate brief, Jolynne claims that after Katrina, she learned for the first time that David had failed to increase the wind policy’s limits on the structure, contents, business interruption, as she requested. David disputes Jolynne’s claims that she asked him to make any other changes to the policies *1100 other than the changes he made. David claims that he made the following changes after his meeting with Jolynne in the summer of 2005: he increased the limits of coverage under the fire insurance policy to $150,000 for personal property and to $200,000 for loss of business income; and he increased the windstorm insurance policy coverage from $35,000 to $200,000 for loss of business income. David states that the Trapanis also had purchased flood insurance for the first time — $100,000 of coverage on the building and $100,000 for their personal property. David further states that he did not increase the limits of coverage for the building and the personal property under the windstorm policy. David also states that he did not increase the limit of coverage for the building structure under the fire insurance policy. The Trapanis claim that the total payments paid on them flood and wind policies failed to compensate them for all their losses.
¶ 5. The Trapanis filed suit against Treutel in Hancock County Chancery Court on December 2, 2005. The matter eventually went to trial in the Hancock County Circuit Court. During the trial, the circuit judge struck one of the Trapan-is’ exhibits in its entirety and also redacted two of the Trapanis’ exhibits. Additionally, the circuit judge disqualified the Tra-panis’ expert, Peter Quave, after finding that Quave lacked sufficient training and experience in property and casualty insurance sales to qualify as an expert. After the Trapanis rested, Treutel moved for a directed verdict claiming the Trapanis had failed to prove that they had suffered any damage proximately caused by the acts of Treutel. The circuit judge granted the motion, finding that the Trapanis had failed to prove damages. The Trapanis now appeal.
STANDARD OF REVIEW
¶ 6. Appellate courts review a circuit court’s grant or denial of a motion for directed verdict de novo. Solanki v. Ervin, 21 So.3d 552, 556 (¶ 8) (Miss.2009). A motion for directed verdict tests the legal sufficiency of the plaintiffs evidence. Bankston v. Pass Rd. Tire Ctr., Inc., 611 So.2d 998, 1003 (Miss.1992). The supreme court has stated:
In deciding whether a directed verdict ... should be granted, the trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested. He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for that party, the directed verdict should not be given. If reasonable minds might differ as to this question, it becomes a jury issue.
White v. Thomason, 310 So.2d 914, 916-17 (Miss.1975) (citations omitted).
¶ 7. The Mississippi Supreme Court has also held that “[i]n considering the evidence and all reasonable inferences, the court must determine whether the evidence is so overwhelmingly against [the nonmovant] that no reasonable juror could have found in her favor.” Fox v. Smith, 594 So.2d 596, 603 (Miss.1992) (citations omitted). The appellate court considers “whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.’ ” Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes, 988 So.2d 364, 368 (¶ 10) (Miss.2008) (quoting White v. Stewman, 932 So.2d 27, 32 (¶ 11) (Miss.2006)).
¶ 8. Additionally, we review a trial court’s decision regarding the admission or suppression of evidence for abuse of discretion. Miss. Tramp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003).
*1101 DISCUSSION
I. Whether the circuit court erred in directing a verdict for Treutel when it failed to consider the testimony of Jolynne and take all reasonable inferences in her favor as required by Rule 50.
¶ 9. The Trapanis argue that the circuit judge erred by directing a verdict for Treutel after he determined the Tra-panis had failed to present sufficient proof of their losses. They also claim the judge erred by determining that the Trapanis had suffered any damage proximately caused by the acts of Treutel. The Tra-panis claim that Jolynne was qualified to testify about the value of the restaurant structure and its contents, as well as the restaurant’s income and expenses. Thus, they claim the circuit judge should have considered her testimony regarding the issue of damages. The Trapanis submit that expert testimony was not required to prove damages for the value of the structure, contents, and business interruption losses. However, Treutel argues that since the Trapanis received compensation in excess of the amount of damages established at trial by the Trapanis, then the circuit court properly granted the directed verdict.
¶ 10. As stated, appellate courts review de novo a circuit court’s grant or denial of a motion for directed verdict. Solanki, 21 So.3d at 556 (¶ 8). When ruling on Treu-tel’s motion for a directed verdict, the circuit judge stated:
With regard to the loss of income, that must be a loss that would be a covered peril under the policy. There has been no proof before the Court as to how much of the loss was caused by wind storm and how much was caused by flood. Any loss caused by flooding would be excluded under this policy.
This is a case against the agent, not a case against the insurance company. Under Mississippi law a case against an agent is a case that sounds in negligence. The ... elements of a case of negligence are that there has to be a duty, a breach of that duty, and causing damages. And here the Court finds that the proof is not sufficient to show that any loss of income was caused by a covered peril of wind storm. Consequently, the court finds that the motion for a directed verdict will be sustained.
¶ 11. The record shows that the Tra-panis’ insurance policy defined the evidence necessary to establish a claim for loss of business income. Under the terms of the policy, the Trapanis were not entitled to recover the value of the property; rather, they were only entitled to recover the “actual cash value” as defined in the policy. The policy states that “actual cash value will be determined based on the replacement cost of the property less depreciation.” As to the loss of business income, the insurance policy entitled the Trapanis to recover the properly documented “net income” that would have been earned had such physical loss or damage not occurred, plus continuing normal operating expenses incurred by the Trapanis, including payroll, after such physical loss or damage. The policy defines “net income” as “net profit before taxes, a positive amount; or net loss before taxes.”
¶ 12. The Trapanis admitted at trial that their account records existed and were available to document income and expenses for the purposes of establishing the elements of a claim for loss of business income, but the Trapanis failed to produce these records and also failed to offer the account records into evidence at trial. Instead, the Trapanis offered evidence of gross sales and sought to establish expenses and profit through the testimony of *1102 Jolynne at trial. The Trapanis cite to LaCombe v. A-T-O, Inc., 679 F.2d 431, 434 (5th Cir.1982), submitting that the owner of property is qualified by her ownership alone to testify as to her property’s value. In LaCombe, the United States Court of Appeals for the Fifth Circuit reasoned that the owner’s testimony is “subject to attack through cross-examination or independent evidence refuting the owner’s estimate ... with the jury as fact-finder shouldering the responsibility of judging the credibility of the witness, resolving the conflicting evidence, and assessing the weight of opinion testimony.” Id. The Trapanis assert that Jolynne, as co-owner of the restaurant, was thoroughly familiar with the business and its lost assets, and her testimony, therefore, should have been admitted as proper testimony based on personal knowledge. The Tra-panis submit that Jolynne was the best person to testify about the restaurant’s contents, as well as its income and expenses. While Treutel admits that the business owner can testify to value of his or her business, Treutel clarifies that the actual issue in controversy was the replacement cost necessary to rebuild the structure or replace the personal property, and loss of business income as defined by the policy — not the value of the business.
¶ 13. The record shows the Trapanis were paid the policy limits under both the windstorm and flood coverage. The record reflects that the Trapanis received the following insurance payments under the policy: $100,000 for damage to the structure under the flood policy; $100,000 for personal property under the flood policy; $200,000 for loss of business income under the windstorm policy; $76,794 for loss of personal property under the windstorm policy; and $149,477 for damage to the structure under the windstorm policy. The record also shows that the Trapanis received $10,000 for the loss of inventory. Thus, the total payment the Trapanis received under their insurance policies amounted to $636,271. The circuit judge found that the Trapanis also received $179,866 in compensation from the policies for the contents of the restaurant, of which the pre-storm value amounted to only $172,266.44. Additionally, the circuit judge noted that the Trapanis received the sum of $255,456 in coverage benefits for the restaurant’s building, which was valued at $149,477. with the replacement cost of the building ranging from $153,000 to $153,600. Thus, the record reflects that the Trapanis’s losses, which they established at trial, amounted to less than the amount of compensation they received from the insurance policies. Treutel asserts that based upon the testimony at trial, including Jolynne’s, the circuit judge correctly found that the Trapanis failed to prove damages since the Trapanis were fully compensated for the losses established.
¶ 14. Additionally, Treutel submits that since this case involves a claim of negligence, the Trapanis bore the duty of proving that: (1) they requested David to increase to a particular amount their insurance coverage for certain perils; (2) the coverage was available; (3) David failed to secure the coverage; (4) as a proximate cause of that failure they suffered a loss; and (5) the specific amount of damages they sustained. See Mladineo v. Schmidt, 52 So.3d 1154, 1164 (¶ 35) (Miss.2010). Treutel argues the Trapanis failed to produce sufficient evidence establishing any one of those elements. Treu-tel asserts that the circuit court therefore correctly directed a verdict for Treutel.
¶ 15. Regarding the evidence presented in a claim to recover damages, the Mississippi Supreme Court has stated:
It is absolutely incumbent upon the party seeking to prove damages to offer *1103 into evidence the best evidence available [as to] each and every item of damage. If he has records available, they must be produced. While certainty is not required, a party must produce the best that is available to him.
Eastland v. Gregory, 530 So.2d 172, 174 (Miss.1988). See M.R.E. 1002 (“To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by law.”). After reviewing the record, we find that the Trapanis failed to provide sufficient proof, as required by them insurance policy, to support their claim for damages. The record reflects that despite the accounting records’ admitted availability, the records — which would have documented all of the income and expenses necessary to establish the elements of a claim for loss of business income — were not produced or offered into evidence by the Trapanis. Therefore, in taking all reasonable inferences in favor of the Trapanis, we find no error in the circuit judge’s grant of a directed verdict in favor of Treutel. White, 310 So.2d at 916-17. This issue is without merit.
II. Whether the circuit court improperly redacted page five of Trapan-is’ exhibit fifteen as hearsay.
¶ 16. After an objection by Treu-tel, the circuit judge ordered the redaction of a portion of the Trapanis’ exhibit fifteen. Specifically, the judge ordered the removal of page five of that exhibit, a letter written by the Trapanis that was attached to a Small Business Administration (SBA) Disaster Business Loan Application. The Trapanis argue that the redaction of this letter was error, and they assert that the letter should have been admitted under the business-records exception found in Mississippi Rule of Evidence 803(6).
¶ 17. The record shows that on page five of exhibit fifteen, the Trapanis state, without any supporting documentation, that the SBA estimated the cost to rebuild the restaurant to be $720,000. The Tra-panis also stated that an unnamed contractor provided an estimate of over $1,000,000. Treutel claims that the Tra-panis failed to provide proper foundation for this letter, and he submits the letter is both irrelevant and hearsay. After Treu-tel’s objection, the circuit judge agreed that the letter contained estimates of contractors without supporting documentation or evidence. The circuit judge ultimately determined the letter constituted hearsay. As previously recognized, we review a trial court’s decision regarding the admission or suppression of evidence for abuse of discretion. McLemore, 863 So.2d at 34 (¶ 4).
¶ 18. In Kroger v. Scott, 809 So.2d 679, 687 (¶ 24) (Miss.Ct.App.2001), a slip-and-fall case, this Court affirmed the trial judge’s ruling to redact portions of an incident report of a store manager at Kroger who did not actually witness the plaintiffs injury. This Court held that “much of the content provided on the second and third pages of the incident report[,] including [the manager’s] opinion of negligence[,] were hearsay due to the fact that [the manager] was not the original source of the information.” Id. Similarly, the Tra-panis’ letter to the SBA in exhibit fifteen did not have any support or documentation from the contractors for their estimates. Therefore, we find that the circuit judge did not abuse his discretion in redacting the letter from exhibit fifteen due to his determination that the letter contained hearsay statements. This issue is without merit.
III. Whether the circuit court improperly redacted portions of Trapanis’ exhibit sixteen due to lack of relevance.
¶ 19. The Trapanis next argue that circuit judge erred in ordering the *1104 redaction of portions of exhibit sixteen, which the Trapanis labeled “Asset Detail,” listing a number of items described as contents of the restaurant. Specifically, the circuit judge ordered the redaction of all items that he found were leasehold improvements and not assets. The Tra-panis assert that these items should not have been redacted, as they contained some evidence as to the loss to the building’s fixtures, as well as the structure itself.
¶ 20. The record reflects that the Tra-panis prepared exhibit sixteen for the purpose of establishing damages they suffered regarding the loss of business personal property. After hearing the parties’ arguments on the matter, the circuit judge admitted exhibit sixteen into evidence. However, based on Treutel’s objection, the circuit judge ordered that portions of the exhibit be redacted. The redacted portions pertained to the items under the section labeled Leasehold Improvements, which the circuit judge determined did not qualify as contents for the purpose of proving loss of business-personal-property damages pursuant to the insurance policy.
¶ 21. The Trapanis’ insurance policy defined “business personal property” as:
Stock; materials and supplies usual or incidental to the Operations of the Named Insured and like property of others in the Named Insured’s care; custody or control and for which the Named Insured is legally liable: furniture, fixtures, equipment and machinery that are the property of the Named Insured ....
In our review of the record, we observe that the leasehold improvements the circuit judge redacted from exhibit sixteen included items such as construction, flooring, concrete, and plumbing. After reviewing the language in the insurance policy, we agree with the circuit judge’s findings that the items redacted do not fall under the definition of business personal property pursuant to the insurance policy, and we therefore find no abuse of discretion in the circuit judge’s redaction of these items from exhibit sixteen. This issue is without merit.
IV. Whether the circuit court improperly excluded Trapanis’ exhibit seventeen as not being the best evidence of business income as defined in the insurance policy.
¶ 22. The Trapanis also argue that the circuit court improperly excluded exhibit seventeen, which contained daily receipts from the Trapanis’ restaurant, after determining that the receipts were not the best evidence of business income, as defined by the insurance policy.
¶28. The Trapanis cite to Casey v. Valentour, 218 So.2d 863, 865 (Miss.1969), and submit that the best-evidence rule, Mississippi Rule of Evidence 1002, does not preclude a witness from testifying from personal knowledge. The Trapanis further argue that the best-evidence rule does not require the introduction of books of account or other documentary evidence where the business owner is “intimately familiar with [her] business and could speak with sufficient accuracy about the costs and relative volumes of business.” Lynn v. Soterm, Inc., 802 So.2d 162, 171 (¶ 34) (Miss.Ct.App.2001). The Trapanis submit that Jolynne was familiar with the sales and expenses of her business and actively involved with the restaurant’s finances and record keeping. Thus, they contend she was competent to testify regarding the business’s income.
¶ 24. After examining exhibit seventeen, the circuit judge found:
[W]hat we have in [exhibit seventeen] for [identification] is only the gross in *1105 come from the business on a monthly-basis for several months before the storm and for several months after the storm. Since the policy requires that [the Trapanis] prove the net income, the best evidence of net income would be the gross receipts minus operating expenses. And that best evidence would be bills, wage statements or other information that would be prepared by an accountant. And before the Court at this time there is no such documentation, so I’m going to sustain the objection, that this is not the best evidence and way to prove loss of business income according to the policy.
¶ 25. As stated, we review a trial court’s decision regarding the admission of evidence for abuse of discretion. McLemore, 863 So.2d at 34 (¶ 4). The record shows the Trapanis received $200,000 for the loss of business income under their insurance policy. At trial, they sought to recover an additional $100,000 by submitting into evidence a schedule of the gross sales of the restaurant for the period of January 2005 through November 2006, as proof of their loss of business income. The record reflects that the Trapanis’ insurance policy requires proof of net income when making a claim to recover for loss of business income. As previously noted, the transcript reveals that although the Tra-panis had access to bills, monthly expenses, and other items prepared by an accountant — the best evidence of loss of business income — the Trapanis failed to produce these documents at trial. We recognize a business owner may testify as to his or her personal knowledge of costs and relative volumes of business. Lynn, 802 So.2d at 171 (¶ 34). Although the Trapanis bore the burden of proving loss of business income, Jolynne only provided testimony as to the gross sales. We thus find no abuse of discretion by the circuit judge in excluding exhibit seventeen after determining the Trapanis failed to present the type of proof required by the insurance policy regarding their claim for loss of business income. Id. This issue is without merit.
V. Whether the circuit court erred in excluding testimony from Tra-pani’s proposed expert, Quave, because he was unqualified to testify on the proffered subject matter.
¶ 26. The Trapanis next assert as error the circuit judge’s ruling that the Trapani’s proposed insurance expert, Quave, could not testify regarding the lack of diligence on the part of David in securing Jolynne’s allegedly requested increases in the policies. The Trapanis claim that Quave’s requisite knowledge and experience in the insurance field gave him knowledge regarding what insurance products were available, when they were available, and any industry standards concerning placing the coverage.
¶ 27. The Mississippi Supreme Court has established the standard of review for the admission or exclusion of evidence, such as expert testimony, is an abuse of discretion. Investor Resource Services, Inc. v. Cato, 15 So.3d 412, 416 (¶2) (Miss.2009). Mississippi Rule of Evidence 702, which concerns the admissibility of expert testimony, provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the wit *1106 ness has applied the principles and methods reliably to the facts of the case.
¶ 28. The Mississippi Supreme Court has adopted the test provided in Daubert v. Merrell Dow Pharmaceuticals., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and modified by Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), to determine admissibility of expert witness testimony. McLemore, 863 So.2d at 35 (¶ 5). Expert testimony is admissible pursuant to Rule 702 if it is relevant and reliable. Id. at 38 (¶ 16). In other words, (1) “the witness must be qualified by virtue of his or her knowledge, skill, experience or education,” and (2) “the witness’s scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.” Id. at 35 (¶ 7). The supreme court clarified that Rule 702 “does not relax the traditional standards for determining that the witness is indeed qualified to speak an opinion on a matter within a purported field of knowledge.” Id. The trial judge is the gatekeeper who assesses the value of the testimony. Id. at 39 (¶ 21).
¶ 29. In the case before us, Treutel objected to Quave’s testimony on the ground that Quave lacked the requisite qualifications to render an opinion on insurance-agency operations — namely, that Quave had never worked as a casualty underwriter. The circuit judge sustained the objection, noting:
In order to be qualified as an expert witness in a certain field, the testimony of a witness must be relevant and reliable. The witness must have sufficient training to render such an opinion, and such an opinion must be helpful to the trier of fact, which is the jury in this case.
The qualifications before the court at this time is that the practical experience regarding the issues involved in this particular lawsuit of procuring property and casualty insurance for clients is very limited. As a matter of fact, ... Quave said that his experience is limited to one year when he first started in the insurance industry some years ago. Most of his practice has been as a claims adjuster and as a file reviewer for a law firm.
He may very well be qualified to give opinions as to claims handling procedures and standards[;] however the court does not feel that he is qualified to give opinions under the Daubert standard as to insurance agency procurement of property and casualty insurance and the standards that go along with those fields. So I’m going to sustain the objection.
¶ 30. Treutel claims that the circuit judge’s ruling did not constitute error. They cite to Lovett v. Bradford, 676 So.2d 893, 895 (Miss.1996), where the Mississippi Supreme Court found no error in the circuit judge’s exclusion of expert testimony in a suit against an insurance agent over the failure of the agent to obtain proper coverage. The supreme court explained:
Indeed, “expert testimony is required ‘to support an action for malpractice of a professional man in those situations where special skills, knowledge, experience, learning or the like are required.’ ” Wirtz v. Switzer, 586 So.2d 775, 780 (Miss.1991) [ (abrogated on other grounds by Upchurch Plumbing, Inc. v. Greenwood Utils. Comm’n, 964 So.2d 1100, 1118 (¶ 45) (Miss.2007) ]) (involving accounting profession) (citations omitted); Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1160 (Miss.1992) (involving aviation profession); Hickox By and Through Hickox v. Holleman, 502 So.2d 626, 635 (Miss.1987) [(superseded by rule as stated in Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 35 (¶ 8) *1107 (Miss.2003) ]) (involving legal profession); Dean v. Conn, 419 So.2d 148, 150 (Miss.1982) (involving legal profession).
However, this Court has not held that insurance salesmen belong to such a profession. In addition, there is no evidence that “special skills, knowledge, experience, learning or the like” were required in this case. See Wirtz, 586 So.2d at 780. Therefore, regardless of whether expert testimony should be required in most cases against insurance agents, this does not appear to be a case that involves underwriting or actuarial tables or anything so complicated as to necessitate the testimony of an expert witness. Rather this is a negligence case based on [Roger] Bradford and [Jimmy] Lovett’s discussion of Bradford’s application for insurance—a matter that a layman can understand based on common sense and practical experience. See Palmer v. Anderson Infirmary Benev. Ass’n, 656 So.2d 790, 795 (Miss.1995); see also M.R.E. 702. Therefore, expert testimony was not necessary to establish the standard of care in this case.

Id.

¶ 31. This Court must limit an expert’s testimony to matters within his demonstrated area of expertise. Seal v.. Miller, 605 So.2d 240, 247 (Miss.1992). In General Motors Acceptance Corp. v. Baymon, 732 So.2d 262, 272 (¶¶ 49-53) (Miss.1999), the supreme court found reversible error where experts were improperly allowed by the trial judge to testify to areas outside of their stated fields of expertise. Therefore, after reviewing the test for the admissibility of expert testimony, we find that the circuit judge in this case committed no abuse of his discretion by excluding Quave’s testimony after finding him unqualified to testify as an expert. This issue is without merit.
VI. Whether the circuit court improperly allowed Treutel to claim a defense it never asserted.
¶ 32. Finally, the Trapanis claim that the circuit judge improperly shifted the burden to them to prove that they could have recovered for wind damages if David had placed the requested windstorm limits of $300,000 on the structure and contents. The Trapanis argue that because Treutel did not refuse to pay policy limits on wind damage, it waived any dispute as to causation.
¶ 33. Alternatively, the Trapanis submit that they only bore the burden of proving that Treutel could have raised the coverage limits as requested, and that the Trapanis sustained damages equal to or greater than the policy limits that David allegedly negligently failed to raise.
¶ 34. The record reflects that the Tra-panis’ restaurant suffered significant wind and flood damage during Hurricane Katrina. The Trapanis’ insurance policies paid the respective limits under the windstorm policy, including $149,477 for damage to the structure, $76,794 for personal property loss, and $35,000 for loss of business income. As stated previously, the Trapan-is assert that prior to Hurricane Katrina, Jolynne requested for David to increase the windstorm policy limit for the structure to $300,000, for personal property to $150,000, and for business income to $300,000.
¶ 35. Our supreme court reiterated in Robichaux v. Nationwide Mutual Fire Insurance Co., 81 So.3d 1030, 1040 (¶ 28) (Miss.2011), that the insured bears the burden of proving that his property “suffered accidental, direct, physical loss as a result of one of the enumerated perils, namely windstorm.” Additionally, the plaintiff bears the burden of proving the *1108 elements for a negligence claim, including damages. Holliday v. Pizza Inn, Inc., 659 So.2d 860, 864 (Miss.1995).
¶ 36. After hearing testimony in this case, the circuit judge found that “there has been no proof before the court as to how much of the loss was caused by wind storm,” and he held that the Trapanis failed to prove that the restaurant sustained damages exceeding the policy limit due to windstorm. After reviewing the record before us, we find no abuse of discretion by the circuit judge in finding that the Trapanis failed to provide sufficient admissible evidence that they sustained damages in excess of the amount Treutel paid the Trapanis under the insurance policy. This issue is without merit.
¶ 37. After reviewing the record before us and taking all reasonable inferences in favor of the Trapanis, we find no error in the circuit judge’s grant of a directed verdict in favor of Treutel. See White, 310 So.2d at 916-17. Accordingly, we affirm the circuit court’s judgment.
¶ 38. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. LEE, C.J., AND ISHEE, J., NOT PARTICIPATING.

. For the purposes of this opinion, we refer to the appellants collectively as the Trapanis, unless the context requires otherwise.

. For the purposes of this opinion, we refer to the appellees collectively as Treutel, unless the context requires otherwise.