CARLTON, J.,
for the Court:
¶ 1. Patty Howell appeals the judgment of the Tippah County Circuit Court, which returned a verdict in favor of Peggy Holiday d/b/a Salon 15 (“Holiday”). Howell raises the following assignments of error: whether (1) the trial court abused his discretion in refusing to allow the plaintiffs expert to testify at trial; (2) the trial court erred in instructing the jury with regard to possible joint liability between Holiday and her landlord; (3) the trial court improperly allowed the jury to determine the. status of Howell as an invitee or licensee; and (4) the trial court, erred in failing to grant a directed verdict on the issue of liability. Finding no error, we affirm.
FACTS
¶ 2. In November 2007, Holiday entered into an oral agreement with James R. Neal Sr. to rent a space in a strip mall on Highway 15 in Ripley, Mississippi, for $400 per month. Holiday opened her business, Salon 15, in the space on the far end of the *842 strip mall, one of five storefronts on the premises. Holiday understood her rented space to include her storefront’s interior space. Holiday and Neal never discussed the exterior spaces and common areas of the strip mall in their conversations establishing their agreement.
¶ 3. When Holiday moved into the strip mall, she questioned Neal about the portable roadside signs located in front of the parking lot. Neal granted Holiday permission to use one of the signs free of charge. Through his business, Neal provided the lettering for the sign to Holiday. At the time, one of the signs received power by a worn, faded extension cord that ran across the parking lot and plugged into an exterior outlet on the building under one of Holiday’s store windows. The second sign received its power by a cord plugged into a similar exterior outlet below the window of American Cash Advance, the storefront next to Holiday’s Salon 15. Holiday notified Neal that she had replaced the cord to prevent anyone from being shocked, to which Neal stated no objection. The new extension cord was bright orange.
¶ 4. On Saturday, January 26, 2008, at approximately 4:30 p.m., Holiday turned off the interior lights and closed Salon 15 for the day. Sometime after 7:00 p.m., Howell arrived at the strip mall with the intention of attending a gospel singing event at BKN TV 19, a local television station located in the strip mall open to the public every Saturday evening for this same purpose. The television station occupied the storefront on the opposite end of the premises from Salon 15. Due to the multiple cars in the strip mail’s parking lot, Howell parked on the end of the lot closest to Salon 15. After parking, Howell proceeded to walk down the sidewalk in front of the strip mall toward the television station. Howell subsequently tripped and fell on an extension cord before she reached her destination. Henry Jeter and Jerry Jeter, also present to participate in the gospel singing at the television station, came to Howell’s aid. Henry testified that when he reached Howell’s side, she was located in the area of the third awning of the strip mail’s storefronts. Holiday later testified that the area referred to by Henry was between Mid-South Graphics and American Cash Advance, not in front of Salon 15. As stated, testimony was presented at trial that American Cash Advance, the business between Salon 15 and Mid-South Graphics, also used an extension cord to power a portable roadside sign.
COURSE OF PROCEEDINGS
¶ 5. On August 21, 2008, Howell filed a complaint in the Circuit Court of Tippah County, alleging that Holiday and Neal were liable for Howell’s injuries resulting from a fall. As reflected in Howell’s second amended complaint filed on February 5, 2010, Neal was ultimately dismissed from the suit.
¶ 6. A trial commenced on November 1, 2011. At the close of trial, the jury returned a verdict in favor of Holiday. The trial court entered a final judgment incorporating the verdict on February 28, 2012. Howell now appeals.
DISCUSSION
I. EXCLUSION OF EXPERT WITNESS
¶ 7. Howell provided Holiday with plaintiffs expert M. Derek Barrentine’s report dated February 11, 2011. Howell states that Barrentine was retained to testify in the field of civil engineering and premises liability. In the February 2011 report, Barrentine described his proposed expert opinions as based on his “professional ex *843 perience as a Civil Engineer and Public Works Director.” Barrentine further stated, without any supporting authority, that the standard for “proper installation of electrical equipment is the National Electric Code (NEC).” Based solely on the “technical-consideration” standard of the NEC, Barrentine opined that the standard of care for commercial business access was not met on- the date of Howell’s injury and that “the accident would not have happened if the Defendant had observed [n]a-tional standards for portable signs.” The February 2011 report included no reference to a “national standard” other than the NEC.
¶ 8. In response, Holiday filed a motion to strike the testimony and opinion of Bar-rentine, arguing that the NEC was inapplicable to the facts of the case and that Barrentine’s opinions, based on the NEC, were irrelevant under the Mississippi Rules of Evidence and the Daubert[1] standard. Howell responded to Holiday’s motion by supplementing her discovery responses with a second expert report from Barrentine, dated October 25, 2011. In the October 2011 report, Barrentine stated that the subject extension cord created a change in the level of the walkway, which directly violated the Americans with Disabilities Act (ADA). The October 2011 report was the first and only mention by Barrentine of the ADA Accessibility Guidelines as a “standard” applicable to the facts of the case. On October 28, 2011, Holiday filed a second motion to strike the testimony and opinion of Barrentine. In this second motion, Holiday argued that the supplemental report, containing a new theory of liability based on the ADA guidelines, was untimely and unduly prejudicial to her.
¶ 9. Prior to trial, the trial court heard Holiday’s motions to strike. Holiday argued that Barrentine’s proposed expert opinion based on the NEC should be stricken because it failed to meet the Dau-bert standard, specifically the suggested five considerations for determination of whether the opinion is reliable. Holiday contended that the NEC is a voluntary code designed to prevent fire hazards, not trip-and-fall hazards. Secondly, Holiday argued that the subsequent proposed opinion based on the ADA guidelines should be stricken as untimely and prejudicial since the October 2011 report was received by Holiday less than a week before the trial of the matter commenced. In response, Howell argued that Barrentine’s opinions had nothing “to do with any code.” Howell asserted that the issue at hand, “from a physics and an engineering standpoint,” had to do with “why an alteration in the sidewalk and, in this case, an electrical cord strung across the sidewalk!,] would cause someone to fall.” Howell contended that Barrentine’s testimony “as an accident reconstructionist” would “explain to the jury what Holiday did from a science standpoint [sic] would cause somebody to fall.”
¶ 10. After hearing argument by both parties, the trial court excluded Barren-tine’s testimony. In excluding the testimony, the trial court ruled that (1) Tippah County had not enacted the NEC, and that the NEC only applies to electrical injuries and hazards; therefore, it would not assist the trier of fact in a trip-and-fall case; and (2) Barrentine’s opinion based on the ADA guidelines should have been furnished in a more timely manner, but even if it had been, it would not assist the trier of fact.
*844 ¶ 11. Howell argues that the trial court erred in excluding Barrentine’s expert testimony. Howell asserts that the trial court’s ruling constituted an abuse of discretion because Barrentine’s testimony was both relevant and reliable, which would have guided the jury in its deliberations. Howell asserts that Barrentine should have been allowed to testify about his opinions as to how the alteration in the sidewalk would be a tripping hazzard and “how exterior walkways should be maintained in the context of ‘safety standards to prevent injury.’ ”
¶ 12. We pause to note that while Howell provides the content of Barren-tine’s proposed testimony in his appellate brief, the record shows that Howell failed to make a proffer as to Barrentine’s expected testimony either at the pretrial motion hearing or at the trial of this matter, particularly as to accident reconstruction. Thus, Howell is procedurally barred from appealing Barrentine’s alleged proposed testimony now. See M.R.E. 103(a)(2).
¶ 13. This Court’s “well-settled standard of review for the admission or suppression of evidence is abuse of discretion.” Mitchell v. Barnes, 96 So.3d 771, 776 (¶ 14) (Miss.Ct.App.2012). The Mississippi Supreme Court has concluded that the trial court’s decision will stand unless we conclude that the exercise of “discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id. “The Mississippi Supreme Court has held that ‘expert testimony admitted at trial must be based on scientific methods and procedures, not on unsupported speculation or subjective belief.’ ” Thompson v. EchoStar Commc’ns Corp., 89 So.3d 696, 699 (¶ 12) (Miss.Ct.App.2012). Rule 702 of the Mississippi Rules- of Evidence states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
“Under Rule 702, trial courts are charged with being gatekeepers in evaluating the admissibility of expert testimony.” Mitchell, 96 So.3d at 776 (¶ 15) (quotation marks omitted). Rule 702 “recognizes the gatek-eeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable.” Mitchell, 96 So.3d at 776 (¶ 15).
¶ 14. The trial court did not abuse its discretion in excluding Barrentine’s testimony. Id. at (¶ 14). The trial court struck Barrentine’s initial opinions as set forth in his February 2011 report, finding that the NEC was not relevant to the facts of this case and would not assist the trier of fact. Neither of Barrentine’s reports offered information that showed the NEC’s relevance to determining whether the presence of an extension cord across a sidewalk constituted a tripping hazard nor its relevance to determining the applicable standard of care in this case.
¶ 15. Furthermore, the record reflects that Barrentine’s October 2011 supplemental report contained an altogether new theory of liability based on ADA guidelines. This late submission of an expert report violates Rule 4.04(A) of the Uniform Rules of Circuit and County Court because Howell failed to reveal the new subject matter of Barrentine’s testimony at least sixty days before trial, and no special circumstances existed to justify Howell’s late designation of this opinion. Rule 4.04(A) provides: “Absent special cir *845 cumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial.” This rule applies to supplementation of the reports of experts who have already been designated. See, e.g., Martin ex rel. Heirs of Martin v. B & B Concrete Co., 71 So.3d 611, 617-18 (¶¶ 23-27) (Miss.Ct.App.2011).[2] Allowing Barren-tine to testify on this matter would result in unduly and irreversible prejudice to Holiday. Howell timely provided Barren-tine’s opinions regarding the NEC, but she neglected to provide any reference to the ADA guidelines prior to one week before trial. After reviewing the record, we find that the trial court abused no discretion in excluding Barrentine’s opinions.
¶ 16. Accordingly, we find that this issue is without merit.
II. JURY INSTRUCTION — JOINT LIABILITY
¶ 17. Howell argues that the trial judge improperly allowed Holiday’s instruction to the jury with regard to joint liability between herself and Neal, her landlord. Howell contends that Mississippi precedent makes it clear that when a property owner leases property to a tenant without a written lease, the right of possession and responsibility for the condition of the property pass to the lessee. According to Howell, this transfer of rights and responsibilities includes the areas of access to the property, such as a sidewalk in front of the property. Thus, Howell alleges that the trial court improperly allowed the jury to find Neal, the landlord, primarily responsible for Howell’s injuries despite the fact that the landlord possessed no legal responsibility under Mississippi law for the condition of the property upon which Howell fell, and Holiday held sole responsibility for the condition of the property.
 ¶ 18. The Mississippi Supreme Court has stated:
On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Defects in specific instructions do not require reversal “where all instructions taken as a whole fairly — although not perfectly — announce the applicable primary rules of law.” However, if those, instructions do not fairly or adequately instruct the jury, we can and will reverse.
Mitchell, 96 So.3d at 775 (¶ 9) (citation omitted); see also Martin, 71 So.3d at 613 (¶ 5). Upon review, we must consider any portions of the jury instructions in context since all the instructions must be considered together. Haggerty v. Foster, 838 So.2d 948, 953 (¶ 4) (Miss.2002). “When analyzing the [giving] or refusal of a jury instruction, two questions should be asked: Does the instruction contain a correct statement of law and is the instruction warranted by the evidence?” Mitchell, 96 So.3d at 775 (¶ 9).
¶ 19. Holiday’s Jury Instruction 17M was offered and accepted as modified[3] by the trial court to allow the jury the opportunity to allocate fault to the Holiday’s nonparty landlord, Neal. During the jury-instruction conference, the trial court stated: “I believe this will be an issue for the jury[,] and I think it will cover the defendant’s theory of the case[.]”
*846 ¶ 20. Mississippi Supreme Court precedent holds that “the refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper” only if “no hypothetical ... reasonable jury could find the facts in accordance with the theory of the requested instruction.” Hill v. Dunaway, 487 So.2d 807, 809 (Miss.1986); see also Church v. Massey, 697 So.2d 407, 410-11 (Miss.1997). An examination of the testimony in this case supports the court’s jury instruction regarding joint liability between Holiday and Neal. Holiday and Neal possessed an oral agreement regarding Holiday’s payment for space in the strip mall for Salon 15, but Holiday testified that she and Neal never discussed the space located outside or adjacent to the actual building. According to Holiday’s testimony at trial, prior to her leasing of the premises for Salon 15, an extension cord ran across the sidewalk and powered an electric roadside sign. Holiday further testified that Neal permitted her access to the sign, and that Neal possessed knowledge of the extension cord on the sidewalk in front of her storefront, as well as the second extension cord in front of an adjacent storefront leased by American Cash Advance. Holiday testified that around the time she opened her business, Salon 15, at this location, she notified Neal as to her intent to replace the worn extension cord with a newer one, to which he expressed no objection. Howell provided that on the evening of the accident, Neal was present on the property and running the video camera at the television station. The record also reflects that at the time of this broadcast, to which the public was invited, Salon 15 was closed. Again, Salon 15 was located in a storefront at the opposite end of the strip mall from the television station.
¶ 21. The evidence presented at trial supports a finding that Neal at least exercised joint control of the sidewalk in front of the strip mall. See Titus v. Williams, 844 So.2d 459, 466 (¶ 23) (Miss.2003) (“When parties fail to allocate responsibility for keeping a leased premises in a safe condition through contract, Mississippi common law places that duty squarely on the party who possesses or controls the property.”). No written agreement existed between Holiday and Neal, her landlord; therefore, no clear-cut answer existed as to who retained control over the sidewalk in front of Holiday’s storefront. The question of possession and control was a question of fact to be resolved by the jury as the fact-finder.
¶ 22. Jury instructions must be read as a whole to determine whether a jury has been correctly instructed. See Mitchell, 96 So.3d at 775 (¶ 9). Here, when so read, the instructions fairly announce the law of this case. Holiday was entitled to jury instructions regarding all genuine issues of material fact supported by the credible evidence. The potential liability of Neal, Holiday’s landlord, was supported by the evidence presented at trial. This issue is without merit.
III. PLAINTIFF’S STATUS
¶ 23. Howell argues that the trial judge improperly allowed the jury to determine the status of Howell as an invitee or licensee, when the rule in Mississippi is that' when the facts are not disputed, the issue of whether an injured person was a licensee or an invitee is a legal question to be determined by the trial court, not the jury. Howell alleges that the trial court even instructed the jury that it should enter a verdict for Holiday unless it found that she willfully and wantonly injured Howell. Howell asserts that because no basis existed for instructing the jury on determining Howell’s status, and because there is no way to determine if the jury *847 applied the proper standard, Howell was plainly prejudiced by the trial court’s error in failing to instruct the jury on the proper standard to be applied.
¶ 24. In reviewing this assignment of error, we acknowledge that “[t]he determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in disputed the classification becomes a question of law for the trial judge.” Adams ex Rel. Adams v. Fred’s Dollar Store of Batesville, 497 So.2d 1097, 1100 (Miss.1986); see also Albert v. Scott’s Truck Plaza, Inc., 978 So.2d 1264, 1267 (¶ 7) (Miss.2008).
¶ 25. After reviewing the record, we find that the trial court did not err in submitting the question of Howell’s status to the jury because disputed facts existed in this case, and the parties presented conflicting evidence at trial. The appellant, Howell, testified that on the night in question, she possessed no intention to visit Salon 15; she received no services from Holiday; and she had nothing to do with Holiday’s business, Salon 15. There was no “open” sign at Salon 15, and no lights came from inside the store. Howell testified that her only intention on the night of her accident was to visit the television station located within the strip mall.
¶ 26. Holiday, the appellee, testified that she closed Salon 15, her business, and existed the premises at approximately 4:30 p.m. on the day of Howell’s injury, which occurred around 7:00 p.m. Holiday raises no dispute as to the fact that Howell’s status constituted that of an invitee of the television station; however, Holiday disputes that this same status of Howell extends to all of the businesses in the strip mall. As the testimony shows, Howell was not on the premises at the open or implied invitation of Holiday, and Holiday was unaware of Howell’s presence on the day of the accident. Further, Howell failed to present any benefit Holiday gained from Howell’s presence at the strip mall that day. The record therefore reflects a factual dispute existed as to Howell’s status with respect to Salon 15.
¶ 27. With respect to Neal, Holiday’s landlord, Howell testified that Neal was present on the premises on the evening of the accident. Other testimony indicated that Neal was aware that people would be parking in the strip mail’s parking lot and using the sidewalk that ran in front of the strip mall. As the landlord, Neal arguably maintained some possession and control of the common areas on the premises. Thus, Howell could be considered an invitee in relation to Neal, as the lessor.
¶28. As evidenced above, the facts of this case appear to be disputed, particularly those facts regarding possession and control of the common areas of the premises and responsibility for the alleged dangerous condition of the property. Because conflicting evidence exists regarding Howell’s status, the trial judge properly allowed the jury to weigh the evidence in reaching its verdict. See Fred’s Dollar Store, 497 So.2d at 1100. This issue is without merit.
IV. DIRECTED VERDICT
¶ 29. Howell argues that the trial judge erred in failing to enter a verdict for Howell as a matter of law on the issue of liability because no dispute existed as to the facts and the proximate cause of Howell’s fall. Howell contends that the evidence compelled .a finding by the trial court that Holiday was liable for Howell’s injuries because of the duty owed to Howell by Holiday as the lessee of the business and sidewalk where Howell received her injuries. Furthermore, Howell alleges that Holiday created a dangerous condition by negligently plugging an exposed extension cord into an outlet on the front of her business and running the exposed extension cord across the sidewalk in front of *848 her business. Howell argues that the sidewalk was in a strip mall used by the general public, and that Holiday created a dangerous tripping hazard for anyone using the sidewalk, especially at night in an unlit area.
¶ 30. “Appellate courts review a circuit court’s grant or denial of a motion for directed verdict de novo.” Trapani v. Treutel, 87 So.3d 1096, 1100 (¶ 6) (Miss.Ct.App.2012). “A motion for directed verdict tests the legal sufficiency of the plaintiffs evidence.” Id. The supreme court has held:
In deciding whether a directed verdict should be granted, the trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested. He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for that party, the directed verdict should not be given. If reasonable minds might differ as to this question, it becomes a jury issue.
Id. (quoting White v. Thomason, 310 So.2d 914, 916-17 (Miss.1975)). The supreme court has found that “in considering the evidence and all reasonable inferences, the court must determine whether the evidence is so overwhelmingly against the nonmovant that no reasonable juror could have found in her favor.” Id. at (¶ 7). The appellate court considers “whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.” Id.
¶ 31. Howell and Holiday presented the jury with differing theories of the case supported by substantial evidence, including conflicting testimony regarding: (1) possession and control of the common areas of the strip mall; (2) visibility on the night in question; (3) Howell’s status on the premises; and (4) the location and cause of Howell’s fall. The duty Holiday owed Howell depended entirely on Howell’s status on the premises at the time, which the trial court properly submitted to the jury for determination due to the conflicting evidence presented at trial. Conflicting evidence was presented by the parties at trial regarding Holiday’s liability for Howell’s accident. As such, the trial court did not err in denying Howell’s request for a directed verdict on the issue of liability, because reasonable minds could differ on whether Holiday caused Howell’s injuries. This issue is without merit.
¶ 32. THE JUDGMENT OF THE TIPPAH COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ„ CONCUR. MAXWELL, J., NOT PARTICIPATING.

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. See also Buckley v. Singing River Hosp., 99 So.3d 248, 255 (¶ 24) (Miss.Ct.App.2012) ("While the end result may appear to be harsh, litigants must understand that there is an obligation to timely comply with the orders of our trial courts.”).

. Jury Instruction 17-M was modified to remove "Mid-South Graphics,” a store in the strip mall alleged to be owned and operated by Neal, since no evidence existed that Mid-South Graphics was in possession and control of the sidewalk.